Lazaro MEDINA, Petitioner,

v.

Jose HERRERA and Interstate Forging
Industries, Inc., Respondent.

No. 95–0885.

Supreme Court of Texas.

Argued Dec. 12, 1995.

Decided May 10, 1996.

Rehearing Overruled Sept. 19, 1996.

Stuart F. Lewis, Bryan, for Petitioner.

John D. Wittenmeyer, Houston, William W. Davidson, Angleton, for Respondent.

PHILLIPS, Chief Justice, delivered the opinion of the Court, in which GONZALEZ, HECHT, CORNYN, SPECTOR, OWEN, BAKER and ABBOTT, Justices, joined.

After suffering an injury at work, petitioner applied for and received workers' compensation benefits. We must determine whether his pursuit of that remedy now precludes him from pursuing various common law intentional tort claims against his employer and co-worker. The trial court granted summary judgment for both defendants, and the court of appeals affirmed. 905 S.W.2d 624. We hold that, under the facts of this case, petitioner's claim against his em-

ployer is barred as a matter of law by his election of the workers' compensation remedy, but his claim against his co-worker is not barred. We therefore affirm the judgment of the court of appeals in part and reverse in part, remanding petitioner's claim against his co-worker to the trial court for further proceedings.

I

Petitioner Lazaro Medina alleges that he was assaulted by his supervisor on October 31, 1991, while working at Interstate Forging Industries ("Interstate") in Navasota, Texas. According to Medina, he was riding on a forklift at work driven by his supervisor, Jose Herrera, when Herrera began punching him in the stomach. While attempting to get off the forklift to evade this attack, Medina asserts, he lost his balance and fell, injuring his back.

A week later, on November 6, 1991, Medina began missing work due to his back injury. The following day, Interstate reported the injury to its workers' compensation carrier and to the Workers' Compensation Commission.[1] The carrier, Liberty Mutual Insurance Company, began paying temporary income benefits to Medina on November 20, 1991.

Shortly thereafter, Medina hired an attorney and filed a formal claim for compensation with the Commission. On the claim form, which was prepared by his attorney, Medina described the circumstances of his injury consistently with his present allegations. Liberty never contested that Medina's injury was compensable under the workers' compensation system, and that issue is no longer subject to dispute. *See* TEX.LAB.CODE § 409.021(c) (carrier must contest compensability of injury within sixty days after receiving notice of injury, or else it waives its right to do so).

Liberty ceased paying temporary income benefits on May 22, 1992, contending that Medina had reached maximum medical improvement. *See* TEX.LAB.CODE § 408.102. Disputing this evaluation, Medina requested

a benefit review conference, *see id.* § 410.023, at which the parties failed to reach agreement. After a contested case hearing on January 20, 1993, *see id.* § 410.151, the hearing officer ruled that Medina had not yet reached maximum medical improvement, and thus he was entitled to continued temporary income benefits. Foregoing its right to appeal this ruling, *see id.* § 410.202, Liberty resumed paying temporary income benefits to Medina until November 3, 1993, the date of statutory maximum medical improvement. *See id.* § 401.011(30)(B). Thereafter, Liberty commenced paying impairment income benefits to Medina. It does not appear that Medina contested the impairment rating used by Liberty in calculating the duration of the impairment income benefits. *See id.* § 408.125.

Meanwhile, Medina sued Herrera and Interstate on October 28, 1993, seeking common law damages. Although he alleged no specific causes of action, Medina claimed that Herrera, while acting in the course and scope of his employment with Interstate, had intentionally injured him. After answering, both defendants moved for summary judgment, contending solely that Medina's suit for intentional tort was barred by his earlier election of the workers' compensation remedy. By that time, Liberty had paid Medina over $50,000 in workers' compensation benefits, was scheduled to pay weekly impairment income benefits until June 1994, and was obligated to pay future medical expenses flowing from Medina's injury for the rest of his life. *See* TEX.LAB.CODE § 408.021. The trial court granted summary judgment for both defendants on March 11, 1994.

The court of appeals affirmed the trial court's judgment. It concluded that the workers' compensation remedy and the common law intentional tort remedy are mutually exclusive, so that Medina, by electing the compensation remedy, waived any later claim for intentional tort. 905 S.W.2d at 628–29. We then granted Medina's application for writ of error.

---

1. Medina's injury is governed by the new Workers' Compensation Act, TEX.LAB.CODE §§ 401.001–418.002, which applies to injuries occurring on or after January 31, 1991. *See* Acts 1989, 71st Leg. 2nd C.S., ch. 1, § 17.18.

## II

■ The doctrine of "election of remedies" is an affirmative defense that, under certain circumstances, bars a person from pursuing two inconsistent remedies. *See generally Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850–52 (Tex.1980). We must determine whether this doctrine bars Medina from pursuing intentional tort claims arising from his workplace injury because he earlier applied for and received workers' compensation benefits.

In *Bocanegra*, the Court noted that the election of remedies doctrine combines elements of estoppel, ratification, and unjust enrichment. 605 S.W.2d at 851. Although recognizing that the doctrine had been "widely criticized," *id.* at 850, we concluded that it survives in several branches of the law to prohibit inconsistent legal positions that may produce manifest injustice:

[A]n election will bar recovery when the inconsistency in the assertion of a remedy, right, or state of facts is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust.

*Id.* at 851. Based on these principles, we articulated the following test:

The election doctrine, therefore, may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice.

*Id.* Medina contends that defendants failed to establish three of these elements, any one of which would be sufficient to defeat their right to assert the election doctrine. We address his arguments in turn below.

### A

Medina first argues that his receipt of workers' compensation benefits is not inconsistent with his present intentional tort claims. While we reject this contention as to Medina's claim against his employer, Interstate, we agree with Medina as to his claim against his supervisor, Herrera.

## 1

■ We first address Medina's claim against Interstate. There is no express provision in either the new Workers' Compensation Act or the former act expressly excluding coverage for an injury resulting from an employer's intentional tort. In *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex. 1983), however, which was decided under the former act, we expressly stated that an employee's claim for workers' compensation and his or her claim against the employer at common law for intentional tort are mutually exclusive. *See also Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985); *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981). This result follows from *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556 (1916), which, as a central tenet of upholding the constitutionality of the former act, held that the statute was not intended to apply to or affect an employee's common law claim for intentional tort against his employer. *Id.* at 560. There is nothing in the new Act which evidences any intention to change this result, as the operative provisions creating liability for compensation and shielding employers from common law liability are, in material respects, the same as the former act. *Compare* TEX.LAB.CODE §§ 406.031, 406.032, 408.001, *with* Tex.Rev. Civ.Stat. art. 8306, §§ 3, 3b, 5, 24; art. 8308, § 4.01; and art. 8309, § 1. We thus conclude that the new Act embodies the rule of *Middleton* and its progeny. While these decisions hold that the compensation remedy and intentional tort remedy against an employer are mutually exclusive, to analyze Medina's claim we must examine precisely what is meant by an "employer's intentional tort."

*Middleton* and its progeny clearly remove from the Act's coverage intentional torts attributable directly to an employer, such as where a partner of a partnership-employer personally assaults an employee, *see Jones v. Jeffreys*, 244 S.W.2d 924, 926 (Tex.Civ.App.— Dallas 1951, writ ref'd), or where a corporation specifically directs a servant to commit an assault on a fellow servant. *See Richardson v. The Fair, Inc.*, 124 S.W.2d 885, 886 (Tex.Civ.App.—Beaumont 1939, writ dism'd

judgm't cor.). Because the Act provides no coverage in these situations, the compensation remedy and the intentional tort remedy against the employer are factually inconsistent and thus mutually exclusive.

■ Medina's tort theory against Interstate, however, is that Herrera assaulted him while Herrera was acting in the "course and scope" of his employment with Interstate. Generally, a master is vicariously liable for the torts of its servants committed in the course and scope of their employment. *See Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880, 881 (1948). While we have stated that "[i]t is not ordinarily within the scope of a servant's authority to commit an assault on a third person," *see Texas & Pac. Ry. Co. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236, 239 (1952), exceptions may exist where the assault, although not specifically authorized by the employer, is closely connected with the servant's authorized duties, such as where a security guard uses more force than is necessary in protecting the employer's property. *Id.* Because Interstate offered no summary judgment evidence negating Medina's contention that Herrera was acting in the course and scope of his employment, we assume that allegation to be true for purposes of our present review.

It is far from clear, however, whether *Middleton* and its progeny should be interpreted as holding that, simply because an employee assaults a co-employee in the course and scope of employment, the tort is deemed to be "the intentional tort of the employer" so as to exclude the injury from the Act's coverage. In *Richardson, supra,* the court expressly distinguished between unprovoked assaults committed by co-employees, for which the Act may provide coverage (*see* section II–A–2, *infra* ), and a "malicious assault committed under the direction and at the command of the [corporate] employer ...," which is excepted from the Act's coverage under *Middleton.* 124 S.W.2d at 886. Professor Larson similarly concludes that the intentional tort exception, which is generally recognized in other jurisdictions, should apply to corporate employers only where the "assailant is, by virtue of control or ownership, in effect the alter ego of the corpora-

tion," or where the corporate employer specifically authorizes the assault. 2A LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 68.00, 68.21 (1990). The mere fact that an employer may be liable for conduct under a theory of respondeat superior, according to Professor Larson, should not impute the conduct itself to the employer so as to trigger the exception from workers' compensation coverage. *Id.* Likewise, the mere fact that the tortfeasor holds a supervisory position over the claimant should not trigger the exception. *Id.* § 68.22

While we have on several occasions noted that the Act does not provide coverage for an employer's intentional torts, we have never before discussed the distinctions outlined above, nor have we articulated a rule for determining when conduct of a corporate agent will be attributable to the corporation for purposes of applying the exception. While this issue is important, we decline to resolve it today, as it has not been briefed or argued by the parties and resolution is not necessary to decide this case. As explained below, Medina's common law claim against Interstate is inconsistent with his earlier receipt of compensation benefits regardless of whether or not Herrera's alleged assault is deemed to be the intentional tort of Interstate.

Herrera's alleged assault logically must fall into one of three categories: 1) the assault is attributable directly to Interstate; 2) the assault, although not attributable directly to Interstate, was motivated by an employment-related dispute, or 3) the assault was motivated by personal reasons unrelated to the employment. Under the first category, the Act would not provide coverage pursuant to the rule of *Middleton,* and under the third category the Act would not provide coverage pursuant to an express statutory exception. *See* TEX.LAB.CODE § 406.032(1)(C). In these situations, therefore, the compensation remedy would be factually inconsistent with Medina's tort claim against Interstate, rendering the remedies mutually exclusive.

Under the second category, on the other hand, the Act would provide coverage, as discussed in section II–A–2, *infra.* Thus, in this situation, Medina's earlier receipt of

compensation benefits would not necessarily be factually inconsistent with his present respondeat-superior claim against Interstate. Nonetheless, because the Act would provide coverage, it likewise would shield Interstate from common law liability pursuant to the exclusivity provision. *See* TEX.LAB.CODE § 408.001.[2] Thus, while the remedies would not be *factually* inconsistent, they would still be mutually exclusive for purposes of the election of remedies doctrine.

For the foregoing reasons, we conclude that Medina's earlier receipt of compensation benefits and his present tort suit against Interstate constitute mutually exclusive remedies.

2

■ In contrast, Medina's receipt of compensation benefits is not necessarily inconsistent with his intentional tort claim against Herrera, his former supervisor. The Workers' Compensation Act covers employees for intentional assaults committed by co-workers if the dispute underlying the assault is employment related. *See* TEX.LAB.CODE § 406.031(a); *Insurance Co. of North America v. Estep*, 501 S.W.2d 352, 355 (Tex.Civ. App.—Amarillo 1973, writ ref'd n.r.e.); *Liberty Mut. Ins. Co. v. Hopkins*, 422 S.W.2d 203, 205 (Tex.Civ.App.—Beaumont 1967, writ ref'd n.r.e.); *Aetna Cas. & Sur. Co. v. England*, 212 S.W.2d 964, 967 (Tex.Civ.App.— Beaumont 1948, no writ); 1 LARSON, *supra* § 11.12(b) ("[I]t is universally agreed that if the assault [by a co-worker] grew out of an argument over the performance of the work, ... the assault is compensable."). Thus, if Herrera assaulted Medina for reasons relating to their employment, Medina would be entitled to compensation benefits even though the injury was intentionally inflicted. While the exclusivity provision of the Act would, on its face, protect Herrera from com-

mon law liability under such circumstances, we conclude that the Legislature could not have intended for the workers' compensation system to shield a worker from liability for his or her own intentional assault on a co-worker. Interpreting the act in this manner would be inconsistent with our approach in *Middleton*, where we interpreted the former act as not abrogating an employee's right to recover for intentional torts. 185 S.W. at 560. *See also Elliott v. Brown*, 569 P.2d 1323, 1326–27 (Alaska 1977) (despite exclusivity provision that normally shielded co-employees from common law liability, plaintiff who received workers' compensation benefits could still sue co-employee for intentional injuries, and would not be subject to an election of remedies). *Accord Andrews v. Peters*, 55 N.C.App. 124, 284 S.E.2d 748 (1981); *Bryan v. Utah International*, 533 P.2d 892 (Utah 1975).

■ If the alleged assault was employment related, therefore, Medina could potentially recover compensation benefits *and* common law damages against Herrera for an intentional tort.[3] The remedies thus would not be mutually exclusive.[4] On the other hand, if the alleged assault was motivated by a personal dispute unrelated to the employment, Medina's injury would not be within the Act's coverage, *see American General Ins. Co. v. Williams*, 149 Tex. 1, 227 S.W.2d 788, 791 (1950), and the compensation remedy and the intentional tort remedy *would* be mutually exclusive. As neither Herrera nor Medina offered any summary judgment proof as to the motivation for Herrera's alleged assault, we must indulge all inferences in favor of the non-movant Medina. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). Thus, we conclude that, for purposes of reviewing this summary judgment, Medina's receipt of compensation benefits and his claim for common

---

**2.** The exclusivity provision provides that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage ... against the employer *or an agent or employee of the employer* for ... a work-related injury sustained by the employee." TEX.LAB.CODE § 408.001 (emphasis added).

**3.** We thus disapprove of dicta in *Porter v. Downing*, 578 S.W.2d 460, 461 (Tex.Civ.App.—Texar-

kana 1979, writ ref'd n.r.e.), suggesting that an employee who is intentionally injured by a co-employee is barred from suing the co-employee once the claimant accepts compensation benefits.

**4.** Under such circumstances, Liberty would be subrogated to Medina's recovery against Herrera to the extent of benefits paid. *See* Tex. Labor Code § 417.001.

law intentional tort against Herrera are not mutually exclusive. Because this is a necessary element of the election of remedies defense, the trial court erred in granting summary judgment on this record in favor of Herrera on this ground. Because this disposes of our review of the claim against Herrera, we address the remaining elements of the election of remedies test solely in the context of Medina's claim against Interstate.

### B

Medina next argues that Interstate failed to prove as a matter of law that Medina made an "informed" election of the workers' compensation remedy. We disagree. While the mere receipt of compensation benefits does not automatically satisfy this element, *see Ramirez v. Pecan Deluxe Candy Co.,* 839 S.W.2d 101, 107 (Tex.App.—Dallas 1992, writ denied), there are additional circumstances in this case establishing, as a matter of law, that Medina made an informed election.

In response to Interstate's motion for summary judgment, Medina submitted an affidavit stating that he was in "constant pain" and "without any income whatsoever" following his injury, and that he applied for and received benefits "in order to get some immediate medical attention for [his] injuries and some immediate lost wage compensation to support [himself]." He further asserted that he did not understand that he had a right to pursue a common law intentional tort claim.

■ It is undisputed, however, that Medina was represented by an attorney both in submitting his formal claim for compensation benefits and in securing continued temporary income benefits at the contested case hearing. By the time Medina filed this suit, he had been receiving benefits for almost two years, the entire time while represented by counsel. Under these circumstances, Medina must, as a matter of law, be charged with knowledge of his remedies.

Medina also contends that he did not appreciate the extent of his back injury when he applied for benefits. While we accept this assertion as true for purposes of summary judgment review, it is not the extent of injury but rather the circumstances surrounding the accident which dictate whether it should be pursued as a workers' compensation claim or a common law intentional tort claim. Because Medina's present claim against Interstate is fundamentally inconsistent with his earlier pursuit of compensation benefits, and because Medina is charged with knowledge of the ramifications of his actions, he made an informed choice of remedy as to Interstate.

### C

Medina next argues that allowing him to pursue an intentional tort claim will not cause manifest injustice, because there would be no double recovery. He contends that Liberty may recoup its payments by asserting its statutory right of subrogation against Interstate. We disagree.

■ The Workers' Compensation Act authorizes covered employees to seek common law damages from third parties, further providing that in such third-party actions the carrier is subrogated to the rights of the employee for the amount of benefits paid. These provisions are:

(a) An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.

(b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary....

TEX.LAB.CODE § 417.001. While "third party" is not statutorily defined, the Legislature could not have intended for it to include the employer, as an employee who receives compensation benefits for a covered injury is barred from suing the employer by the Act's exclusivity provision. *See* TEX.LAB.CODE § 408.001. Further, section 417.004 provides that, in third-party actions, "the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, be-

fore the injury or death occurred, a written agreement with the third party to assume the liability." This language likewise indicates that "third party" does not include the employer. Moreover, in interpreting similar provisions under the former Workers' Compensation Act, courts routinely used the term "third party" to refer to actions against persons other than the employer. *See, e.g., Varela v. American Petrofina Co. of Texas, Inc.*, 658 S.W.2d 561, 562 (Tex.1983) ("[The exclusivity provision] abrogates the covered employee's right to recover common law damages from the employer for personal injury covered by the Workers' Compensation Act. However, the employee may seek recovery from a third party whose negligence contributed to the injury."). Thus, section 417.001 does not provide the carrier with a right of subrogation against the employer for benefits paid.

■ The dissent argues that Liberty, even if it cannot pursue statutory subrogation under section 417.001, has a right of equitable subrogation against Interstate for the amount of benefits paid to Medina. Generally, an insurer paying a claim under a policy becomes equitably subrogated to any cause of action the insured may have against a third party responsible for the injury. *See American Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 482 (Tex.1992). Typically when this doctrine is applied, of course, the insured has a valid cause of action against the insurer under the policy and a valid cause of action against the third-party tortfeasor. *See, e.g., Ortiz v. Great Southern Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 343 (Tex.1980). The present case is distinguishable in that Medina's workers' compensation claim and his intentional tort claim against Interstate are mutually exclusive remedies. Thus, the facts underlying Liberty's subrogation claim would be inconsistent with the facts underlying the compensation payments on which the subrogation claim was based. Assuming, however, that a workers' compensation carrier could pursue equitable subrogation under these circumstances, we nonetheless conclude that manifest injustice would result. The carrier, to prevent a double recovery by the claimant, would be required to intervene in the tort proceedings, incurring legal expenses which in any event could not be recovered. Moreover, "[a]n insurer is not entitled to [equitable] subrogation if the insured's loss is in excess of the amounts recovered from the insurer and the third party causing the loss." *Ortiz*, 597 S.W.2d at 343. Thus, any settlement of the tort claim for less than the full amount of the insured's loss would, at least partially, negate the carrier's right of equitable subrogation. *Id.* Finally, and perhaps most importantly, the carrier would be required to in effect sue its own policy-holder, the employer, to recoup amounts it had paid on the policy. This conflict, which we believe would cause overall detriment to the workers' compensation system, is the type of anomalous result which the election doctrine is intended to prevent.

■ We thus conclude that allowing Medina to pursue an intentional tort remedy against Interstate, after having earlier received workers' compensation benefits, will result in manifest injustice.

### III

Medina next argues that the doctrine of election of remedies should not apply because there has been no final judgment regarding his compensation claim. He relies on *Grimes v. Jalco, Inc.*, 630 S.W.2d 282, 285 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), a case decided under the former act. *See also Ferguson v. Hospital Corp. Int'l*, 769 F.2d 268, 275 (5th Cir.1985).

In *Grimes*, a dispute existed as to whether the injured worker was an employee eligible for compensation benefits or an independent contractor not eligible for benefits. The worker, having claimed at the Board hearing that he was an employee, received an award. Apparently dissatisfied with the amount of the award, the worker appealed to district court, where he also asserted a third-party claim against the employer based on an alternative pleading that he was *not* an employee. After the trial court granted summary judgment for the employer, the employee appealed. The court of appeals reversed the summary judgment, holding that the doctrine of election of remedies did not apply because the compensation award was on appeal and

thus not final. The court reached this conclusion even though the employee had received at least 28 weeks of benefits and the carrier apparently no longer disputed that he was a covered employee.

We disagree with *Grimes* to the extent that it holds that a final resolution of the compensation claim is always a necessary element of the election defense. If the claimant's eligibility for compensation benefits is not disputed, the fact that the amount of the ultimate award is still in dispute should not prevent the employee from making a binding election. On the other hand, if the carrier disputes the availability of the compensation remedy, justice may require that the injured worker be allowed to simultaneously pursue, on an alternative basis, compensation benefits and common law damages against the employer. *Cf. Bocanegra,* 605 S.W.2d at 852–53 (worker's receipt of compensation benefits did not bar later claim against group health policy, which covered only non-occupational injuries, where worker had settled compensation case for relatively low amount because of factual dispute as to whether injury was occupational). Where coverage is disputed, the fact that the worker may have accepted some temporary benefits from the carrier will not in and of itself constitute an election of remedies.

In the present case, Liberty never disputed that Medina's injury is compensable under the Workers' Compensation Act, and lost its right to do so sixty days after it received notice of the injury. *See* TEX.LAB. CODE § 409.021(c). Because Medina's entitlement to the workers' compensation remedy was settled when he filed this suit, the fact that there may still have been disputed issues regarding the amount of benefits (although the record is silent as to whether such issues existed) does not negate Interstate's election defense.

### IV

Medina finally argues that the open courts provision of the Texas Constitution protects his intentional tort claim against Interstate. We disagree.

The open courts provision provides as follows:

All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

TEX. CONST. art. I, § 13. This provision prevents the Legislature from, among other things, abrogating the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigant's constitutional right of redress. *See Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 448 (Tex.1993).

As previously discussed, the Workers' Compensation Act does not apply to a worker's intentional tort claim against the employer. Thus, Medina's intentional tort claim against Interstate has not been barred by the Legislature, but rather by his own voluntary election of an inconsistent remedy under the Workers' Compensation Act. Applying the election of remedies defense under these circumstances does not violate Medina's right to open courts. *See Grove Mfg. Co. v. Cardinal Constr. Co.,* 534 S.W.2d 153, 155 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

For the foregoing reasons, we affirm the judgment of the court of appeals as to Medina's claim against Interstate. We reverse the judgment of the court of appeals as to Medina's claim against Herrera, and remand that claim to the trial court for further proceedings.

ENOCH, J., filed a dissenting opinion.

ENOCH, Justice, concurring in part and dissenting in part.

I agree that Medina's claim against Herrera is not barred and to this end I concur. But I disagree with the Court's judgment that Medina's claim against Interstate Forging Industries, Inc. is barred. Receiving workers' compensation benefits and maintaining an intentional tort cause of action for the same injuries are neither legally nor factually inconsistent remedies. Consequently, no election of remedies is required in this case and I respectfully dissent from this portion of the Court's judgment.

First, I note that the Workers' Compensation Act is the exclusive remedy for work-related injuries, with the exception of intentional injuries. *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex.1989); *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex.1983). Additionally, an assault by a supervisor is imputed to the employer under the doctrine of respondeat superior. *Houston Transit Co. v. Felder*, 208 S.W.2d 880, 881 (Tex.1948). Finally, the Workers' Compensation Act provides compensation for intentional injuries, provided they occur within the course and scope of employment. TEX.LAB.CODE § 406.031(a)(2).[1] Therefore, based on a single factual scenario, an employee may receive workers' compensation benefits for an intentional injury suffered within the course and scope of employment and also maintain an intentional tort cause of action against his employer. The worker can maintain the two simultaneously, and because the facts relied upon are not inconsistent, the election of remedies doctrine is not implicated.

## I

The Court erroneously concludes that the two remedies Medina seeks are inconsistent and that he waived his intentional tort cause of action against his employer because he first sought benefits under the Act. 927 S.W.2d 597, 602. I acknowledge that courts, including this Court, have reached similar conclusions in other cases. *Massey*, 652 S.W.2d at 933 ("An employee ... may waive his cause of action for intentional tort if he seeks benefits under the Act.") (dicta); *Jones v. Jeffreys*, 244 S.W.2d 924, 926 (Tex.Civ. App.—Dallas 1951, writ ref'd) (same); *see Ramirez v. Pecan Deluxe Candy Co.*, 839 S.W.2d 101, 107 (Tex.App.—Dallas 1992, writ denied) (requiring final commission award before election of remedies occurs). But they too are incorrect. The Court's position is based on a faulty application of the election

of remedies doctrine. This doctrine relies on principles of estoppel, ratification, and unjust enrichment. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980). And these principles are applied to the *factual* underpinnings of the claims. *Id.* As the Court concedes, Medina's claim for intentional injuries against his employer is not factually inconsistent with his workers' compensation claim. 927 S.W.2d at 600.

Considering its concession, the Court's conclusion is not supported by the cases it cites because they all rely on *factual* inconsistencies. For example, in *Bocanegra*, the plaintiff collected workers' compensation after asserting that an injury was incurred on the job, but later attempted to collect medical insurance claiming the injury was *non-occupational*. 605 S.W.2d at 849–50; *see also Grove Mfg. Co. v. Cardinal Constr. Co.*, 534 S.W.2d 153, 155 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (alleging intentional injury after collecting workers' compensation for an admitted *accidental* injury); *Jones*, 244 S.W.2d at 926 (same). Medina has maintained throughout the course of these proceedings that he incurred an intentional injury in the course and scope of his employment. By statute, Medina has workers' compensation coverage and an existing common law cause of action for injuries resulting from an intentional tort.

## II

There is another problem with the Court's decision in this case. Applying the election doctrine to bar an employee's intentional tort cause of action because of estoppel or ratification principles violates the Texas Constitution. An employee's right to pursue an intentional tort cause of action, even when the employee first files for workers' compensation, is premised on the Open Courts provision of the Texas Constitution. TEX. CONST. art. I, § 13. Article I, Section 13 guarantees

---

1. Embodied within the current Act is a "personal animosity" exception. TEX.LAB.CODE § 406.032(1)(C). This exception helps delineate exactly which actions occur within the course and scope of employment and those that do not. Notwithstanding this exception, when an employee suffers a direct assault, if "conditions at-

tached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment." *Nasser v. Security Ins. Co.*, 724 S.W.2d 17, 19 (Tex.1987); *see Garcia v. Texas Indem. Ins. Co.*, 146 Tex. 413, 209 S.W.2d 333, 336 (1948).

an employee a cause of action for common law intentional torts, notwithstanding the coverage provided by the Workers' Compensation Act, thus precluding an estoppel or ratification argument. *Castleberry v. Goolsby Building Corp.*, 617 S.W.2d 665, 666 (Tex. 1981). When determining the constitutionality of a former Workers' Compensation Act in *Middleton v. Texas Power & Light Co.*, we held:

> [The Workers' Compensation Act's] evident purpose was to confine its operation to only accidental injuries and its scope is to be so limited.... [Due to Article I, Section 13 of the Texas Constitution,] the Legislature is without the power to deny the citizen the right to resort to the courts for the redress of any intentional injury to his person by another.... *This Act does not affect the right of redress for that class of wrongs.* The injuries, or wrongs, with which it deals are accidental injuries or wrongs.

185 S.W. 556, 560 (Tex.1916) (emphasis added). Courts interpret Article I, Section 13 to prohibit "legislative action withdrawing common law remedies for well established common law causes of action" if the substituted remedy is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995) (quoting *Trinity River Auth. v. URS Consultants, Inc.—Texas*, 889 S.W.2d 259, 261–62 (Tex.1994)).

The Workers' Compensation Act's abridgment of common law *negligence* actions is not viewed as arbitrary or unreasonable. *Id.* The workers' compensation system "balances the advantage to employers of immunity from *negligence* and potentially larger recovery in common law actions against the advantage to employees of relatively swift and certain compensation without proof of fault." *Reed Tool*, 689 S.W.2d at 407 (emphasis added). "If employers are required to provide not only worker's compensation but also to defend and pay for *accidental injuries,* their ability to spread the risk through reasonable insurance premiums is threatened, and the balance of advantage and detriment would be significantly disturbed." *Id.* (emphasis add-

ed). Had this Court in *Reed Tool* intended to hold that the Act precluded common law actions for intentional torts as well, we would not have specifically noted in that case that the policy of exchanging guaranteed compensation for common law actions applied only to negligence and other accidental injuries. *Id.*

The Court acknowledges that the Act "was not intended to apply to or affect an employee's common law claim for intentional tort against his employer." 927 S.W.2d at 600. But the Court skirts this issue by ignoring the terms of the current Act, which allows compensation for *any* injury suffered within the course and scope of employment. Tex.Lab.Code § 406.031(a)(2). An injury suffered within the course and scope of employment could include accidental as well as intentional injuries provided the injury suffered is "incident to employment" and not covered by the narrowly drawn "personal animosity" exception. *Nasser*, 724 S.W.2d at 19. The Court then attempts to cursorily dispose of the issue by holding that the exclusivity provision of the Act, Tex.Lab.Code § 408.001(a), shields an employer from common law liability if compensation is allowed or paid under the Act. 927 S.W.2d at 600. This is a fatal flaw in the Court's reasoning because the exclusivity provision cannot be read to preclude common law intentional tort claims lest it be rendered unconstitutional. *Middleton*, 185 S.W. at 560–61 (Workers' Compensation Act does not preclude common law intentional tort causes of action).

### III

In holding that an employee makes an election of remedies by accepting workers' compensation benefits, the Court appears to place its primary emphasis on the third legal basis for the election of remedies doctrine— the threat that an employee would receive double compensation if allowed to recover workers' compensation benefits and maintain a common law intentional tort cause of action against the employer, thus resulting in manifest injustice. 927 S.W.2d at 601. This threat is eliminated by the workers' compensation carrier's ability to recoup its payments made by intervening in the employee's intentional tort lawsuit. Tex.Lab.Code §§ 417.001–.002. "[T]he insurance carrier is subrogated to the rights of the injured employee and may en-

force the liability of the third party in the name of the injured employee." *Id.* § 417.001. The insurance carrier may use the proceeds from the lawsuit to reimburse itself for payments made and treat any excess amount as an advance against future benefits it owes the injured employee. *Id.* §§ 417.001–.002.

I concede, as the Court correctly points out, that the term "third party" does not clearly indicate whether the Act considers the employer a third party against whom the workers' compensation carrier may seek reimbursement. Nevertheless, under common law equitable subrogation, the workers' compensation carrier may still intervene to recoup its payments made and establish offsets to possible future payments. The purpose behind equitable subrogation is to prevent the debtor/employee from being unjustly enriched. *Smart v. Tower Land & Inv. Co.,* 597 S.W.2d 333, 337 (Tex.1980). Under this equitable doctrine, a party who makes payments for the benefit of a debtor, or in this case, an injured employee, is subrogated to the rights of the debtor. *First Nat'l Bank of Kerrville v. O'Dell,* 856 S.W.2d 410, 415 (Tex. 1993); *American Centennial Ins. v. Canal Ins. Co.,* 843 S.W.2d 480, 482 (Tex.1992). In the insurance context, equitable subrogation allows the insurance carrier to intervene in an insured's lawsuit against a third party to recoup payments made by the carrier. *Ortiz v. Great S. Fire & Casualty Ins. Co.,* 597 S.W.2d 342, 343 (Tex.1980). This prevents the insured from receiving a double recovery for the same injuries. *Id.* The Court correctly states the principle that "[a]n insurer is not entitled to [equitable] subrogation if the insured's loss is in excess of the amounts recovered from the insurer and the third party causing the loss." 927 S.W.2d at 604 (quoting *Ortiz,* 597 S.W.2d at 343). But then, of course, the insured would not yet have received a double recovery. Accordingly, the doctrine of equitable subrogation can be applied to the workers' compensation scheme to guard against the possibility of double compensation, prevent unjust enrichment, and preserve equity.

IV

Concluding, it is my view that the public policy behind the workers' compensation scheme favors allowing an injured employee to simultaneously accept workers' compensation benefits and maintain an intentional tort cause of action. When first injured, the employee may be unable to work and financially incapable of waiting an extended period of time while in pursuit of a damage award in an intentional tort lawsuit. The employee must be able to sustain himself with workers' compensation benefits pending such damage award, which might not be realized for several years, if at all. When the employee does recover damages, the workers' compensation carrier could recoup all benefits paid and offset any future payments from the employee's damage award. In this context, the employee would not be placed in the precarious position of choosing to accept workers' compensation benefits necessary to sustain himself and his family at the peril of losing his constitutionally protected intentional tort cause of action.

\* \* \* \* \* \*

Because the Court erred by applying the election of remedies doctrine to circumstances in which it does not apply, I respectfully dissent. I would reverse the entire judgment of the court of appeals and remand the case to the trial court.