

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00262-CV

———————————————

EMILIANO MEDRANO, Appellant

V.

KERRY INGREDIENTS & FLAVOURS, INCORPORATED, Appellee

---

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-309764-19

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Emiliano Medrano appeals from an order granting summary judgment for Appellee Kerry Ingredients & Flavours, Incorporated based on the Texas Workers' Compensation Act's (the Act's) exclusive-remedy provision and the election-of-remedies doctrine. *See* Tex. Lab. Code Ann. § 408.001. We will affirm.

## II. BACKGROUND

### A. Medrano's Factual Allegations

As alleged in his live pleading, Medrano had been employed by Kerry for approximately four months on August 17, 2018, when he was asked by his supervisor to work a conveyor belt for the first time. Medrano complained that he had neither the proper training nor adequate supervision for such work. After his right hand became caught in the conveyor belt, Medrano's ring finger was severed. After the accident, Medrano "had to go to different areas of the plant, bleeding out, before finally reaching a supervisor," who stopped production of the line. Medrano was taken to the hospital, where he suffered the loss of the finger.

### B. Medrano's Lawsuit

Medrano filed suit against Kerry, alleging tort claims. According to Medrano, Kerry was "liable for intentional, willful and wanton failure to disclose to [him] the dangers associated with exposure to dangerous machinery[ and] the risks associated

with working in that type of atmosphere with no protective gear." Medrano also sought "exemplary and/or punitive damages."

Kerry answered and asserted a general denial and several affirmative defenses, including the workers' compensation bar and the election-of-remedies doctrine.

## C. Kerry's Motion for Summary Judgment

Kerry moved for traditional summary judgment, arguing that Medrano's claims were barred "due to the applicability of the workers' compensation bar . . . and [due to the] election[-]of[-]remedies doctrine." *See id.* It raised the workers' compensation bar as to any non-intentional tort claims, to the extent pleaded, and the election-of-remedies doctrine as to all of Medrano's claims, both intentional torts and non-intentional torts, to the extent pleaded. In the motion, Kerry alleged that Medrano was its employee and was covered by workers' compensation insurance on the day of the accident. Further, the motion asserted that Medrano had "applied for and received workers' compensation benefits" through the "Workers' Compensation and Employers' Liability Policy issued to Kerry Ingredients & Flavours by Arch Indemnity Insurance Company (the 'Policy')." And according to the motion, Medrano was represented by counsel when he "applied for and received workers' compensation benefits in the form of medical and/or indemnity benefits."

Kerry attached the following summary judgment evidence to its motion: the "Employer's First Report of Injury or Illness"; the Policy; an affidavit of Alma LeMoine, a Senior Claims Examiner who oversaw workers' compensation claims

3

under the Policy; an October 12, 2018 letter of representation from Medrano's attorney; Medrano's responses to requests for admission; a "Notice of First Temporary Income Benefit Payment"; a "Texas Workers' Compensation Work Status Report"; and Medrano's deposition.

In LeMoine's affidavit, she averred, in pertinent part:

- One of her duties as a Senior Claims Examiner was to "oversee workers' compensation claims under workers' compensation policies issued by Arch Indemnity Insurance Company," who issued a "standard Texas workers' compensation insurance policy to its insured, Kerry Ingredients."

- That policy was effective from January 1, 2018, to January 1, 2019.

- She handled the workers' compensation/employer's liability claim arising out of Medrano's alleged work-related injury while he was employed by Kerry.

- Arch Indemnity had paid $5,333.29 in workers' compensation income benefits to Medrano and $7,681.24 in medical expenses to Medrano's healthcare providers on his behalf.

- Medrano "was placed at maximum medical improvement on November 1, 2018[,] with a 2% whole body impairment rating, entitling him to six weeks of impairment income benefits."

- Medrano "has also received, at no cost to himself, medical care under the workers' compensation insurance policy issued by Arch Indemnity."

In his responses to requests for admission, Medrano admitted that he was working in the course and scope of his employment with Kerry when the injury occurred; that Kerry was covered by a policy of workers' compensation insurance issued by Arch Indemnity on the date of the injury; that he had filed a workers' compensation claim as a result of his injury; that it is his signature on the "Texas

4

Workers' Compensation Work Status Report (DWC Form-73) dated November 1, 2018"; that he had received "indemnity benefits via the workers' compensation claim" with regard to his injury; that he had received temporary income benefits, impairment income benefits, and medical care from Kerry's workers' compensation insurance carrier; that he had "knowingly received economic benefit[s] from the workers' compensation benefits provided by [his] Employer's insurance carrier"; and that he had been continuously represented by legal counsel since October 12, 2018, including while receiving workers' compensation insurance benefits.

## D. Medrano's Response and Kerry's Reply

Medrano responded to the motion and argued generally that he did not make an "informed election" of remedies. He did not address the part of Kerry's motion dealing with the workers' compensation bar. As evidence, Medrano's response included the "Employer's First Report of Injury or Illness," the "Notice of First Temporary Income Benefit Payment," and his attorney's October 12, 2018 letter of representation.

Kerry replied to the response, highlighting portions of Medrano's responses to the requests for admission and deposition excerpts. Kerry argued, "Because [Medrano's] present intentional tort claim against [Kerry] is fundamentally inconsistent with his earlier pursuit of compensation benefits, and because [Medrano] is charged with knowledge of the ramifications of his action, he made an informed

5

choice of remedy which bars this subsequent intentional tort claim as a matter of law."

## E.  The Trial Court's Grant of Kerry's Summary Judgment Motion

After a hearing, the trial court granted the motion for summary judgment and signed a final judgment that Medrano take nothing against Kerry.[1]  The order did not specify the grounds upon which the trial court granted summary judgment.  Medrano appealed from that judgment.

### III.  DISCUSSION

In one issue, Medrano contends that the trial court erred by granting summary judgment.[2]  While Medrano acknowledges that it is "well settled in Texas" that "claims against an employer under the Act and for common[-]law intentional tort are mutually exclusive" and that "the collection of workers' compensation benefits by an employee who subsequently alleges his injury was by intentional tort constitutes an election of remedies and estops the employee from proceeding to recover damages

---

[1]Earlier in the case, the trial court had granted a plea to the jurisdiction filed by Kerry that had raised the workers' compensation bar.  We reversed the grant of that plea and remanded the case to the trial court, holding that "the trial court had no basis to grant a plea to the jurisdiction concerning an affirmative defense that . . . has nothing to do with jurisdiction." *Medrano v. Kerry Ingredients & Flavours, Inc.*, No. 02-20-00247-CV, 2021 WL 1323432, at *4 (Tex. App.—Fort Worth April 8, 2021, no pet.) (mem. op.).

[2]Medrano frames his issue in the form of a question:  "Did the [t]rial [c]ourt err when it granted Appellee's motion for summary judgment, determining that Appellant's application for and acceptance of workers' compensation benefits was informed and a waiver of his right to damages for intentional tort?"

6

outside the Act," he argues that his election was not made as the result of an informed choice.

## A. Standard of Review and Summary Judgment Law

We review de novo the trial court's ruling on a motion for summary judgment. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022) (citing *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019)). When doing so, "[w]e review the summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021).

For a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Eagle Oil & Gas Co.*, 619 S.W.3d at 705. To meet this burden, when the defendant is the movant, it must conclusively negate at least one essential element of each of the plaintiff's claims or conclusively prove all elements of an affirmative defense. *Stanfield v. Neubaum*, 494 S.W.3d 90, 96–97 (Tex. 2016); *see* Tex. R. Civ. P. 166a(b), (c).

When a trial court's order granting summary judgment does not specify the grounds on which the order is based, the appealing party must negate each ground upon which the judgment could have been based. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022); *see also Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Villanueva v. RNA Fin. LLC*, No. 02-23-00435-CV, 2024 WL

7

3365227, at *2 (Tex. App.—Fort Worth July 11, 2024, no pet.) (mem. op.). If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must affirm the summary judgment on the unchallenged ground, regardless of the unchallenged ground's merit. *Pounders v. Timely Prop. Sols., L.L.C.*, No. 02-22-00395-CV, 2023 WL 3114314, at *2 (Tex. App.—Fort Worth Apr. 27, 2023, no pet.) (mem. op.); *see Malooly Bros., Inc.*, 461 S.W.2d at 120–21.

## B. Applicable Workers' Compensation Law

The Texas Labor Code provides that recovery of workers' compensation benefits is the "exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer . . . for the death of or a work-related injury sustained by the employee." Tex. Lab. Code Ann. § 408.001(a). To enjoy this liability protection, an employer must show that it was explicitly covered for workers' compensation at the time of the employee's injury. *Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 710 (Tex. App.—Fort Worth 2013, no pet.).

In the earlier appeal in this case, we set out the law regarding the exclusive-remedy defense of the Act.

> The Act provides that recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance against the employer for a work-related injury sustained by the employee. Tex. Lab. Code Ann. § 408.001(a); *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 (Tex. 2007); *Little*[, ] 409 S.W.3d [at 710]. We have consistently recognized that the Act's exclusive-remedy provision gives rise to an affirmative defense that is fit for a motion for summary judgment. *See, e.g., Robinson v. Cox*, No. 02-19-00370-CV, 2020 WL 7063289, at *1–2 (Tex. App.—Fort Worth Dec. 3, 2020, no pet.) (mem.

8

op.); *Calhoun v. F. Hall Mowing Co.*, No. 02-09-00459-CV, 2011 WL 167231, at *4 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.) (mem. op.); *Downs v. Triad Denton Hosp., L.P.*, No. 2-05-303-CV, 2006 WL 820408, at *1 (Tex. App.—Fort Worth Mar. 30, 2006, no pet.) (mem. op.). As an "affirmative defense or 'plea in bar,'" it "operates to prohibit the assertion of a cause of action and involves the final disposition of a case." *Tex. Underground, Inc. v. Tex. Workforce Comm'n*, 335 S.W.3d 670, 675 (Tex. App.—Dallas 2011, no pet.).

*Medrano*, 2021 WL 1323432, at *2.

If an employee opts to receive workers' compensation benefits for an injury sustained in the scope of his employment, the employee may be considered to have made an election of remedies and is, therefore, barred from seeking damages for an intentional tort from his employer. *Boullt v. Smith*, No. 03-02-00303-CV, 2004 WL 2357881, at *4 (Tex. App.—Austin Oct. 21, 2004, no pet.) (mem. op.). "The election doctrine . . . may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice." *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980).

## C. Analysis

Kerry's two grounds in its motion for summary judgment related to (1) the exclusive-remedy provision of the Act and (2) the election-of-remedies doctrine. Kerry's first ground was raised solely as to any non-intentional tort claims Medrano may have pleaded; its second ground was raised as to all claims in Medrano's petition. Medrano's summary judgment response argued only whether he made an informed

9

choice under the election-of-remedies doctrine. Similarly, Medrano's sole appellate issue relates only to this prong of Kerry's summary judgment motion. But, as noted previously, the trial court's order did not specify the grounds upon which it granted summary judgment. Thus, although Medrano challenged the sole summary judgment ground related to the intentional torts alleged, he did not challenge both grounds as to any possible non-intentional torts pleaded.

Because the trial court did not specify a basis for its summary judgment ruling, it could have relied upon the unchallenged ground—the exclusive-remedy provision of the Act—in granting summary judgment on the non-intentional tort claims. *See Villanueva*, 2024 WL 3365227, at *3. Thus, because Medrano did not challenge every ground on which the summary judgment on those claims could have been based, we are procedurally required to affirm the trial court's ruling without regard to the merits of Medrano's non-intentional tort claims. *See id.*; *see also Ursin v. Brand Energy Sols., Inc.*, No. 01-22-00651-CV, 2023 WL 3958375, at *2 (Tex. App.—Houston [1st Dist.] June 13, 2023, no pet.) (mem. op.) ("To obtain reversal on appeal, an appellant must challenge all possible grounds on which a summary judgment could have been granted, whether properly or improperly."). Therefore, we will address Medrano's argument on appeal only as to the intentional tort claims.

Under Texas law, Kerry bore the burden of proof on any election-of-remedies defense. *See Am. Cas. Co. of Reading, Penn. v. Martin*, 97 S.W.3d 679, 685 (Tex. App.—Dallas 2003, no pet.). Therefore, to prevail on summary judgment, Kerry must have

10

shown that, as a matter of law, Medrano made an informed choice between two remedies. *See id.* To show that a plaintiff made an informed choice, there must be proof that the plaintiff made a choice "with a full and clear understanding of the problem, facts, and remedies essential to the exercise of an intelligent choice." *Bocanegra*, 605 S.W.2d at 852. Here, Kerry provided summary judgment evidence that Medrano had made an informed choice to receive workers' compensation benefits rather than pursue his intentional tort claim.

At his deposition, Medrano testified that after the date of his accident on August 17, 2018, he was off of work for about a month and, in that month, he received weekly workers' compensation benefits. Medrano further testified that during his month off of work, he received temporary income benefits. In addition, all of the medical expenses for the accident were paid under his workers' compensation claim. By October 12, 2018, Medrano was represented by legal counsel, who continuously represented him for the next five years. Medrano agreed that he "knowingly" received money benefits and medical benefits through his workers' compensation claim. He also signed the "Texas Workers' Compensation Work Status Report" on August 21, 2018. Finally, Medrano testified that he applied for and received all of his workers' compensation benefits, that he never filed a request for any hearings to dispute any of the benefits, and that he never contacted Kerry or the insurance company to say that he did not want workers' compensation benefits.

In his responses to requests for admission, Medrano admitted that he had received temporary income benefits from Kerry's workers' compensation insurance carrier for the weeks of August 18, 2018, through September 18, 2018, and that he had received impairment income benefits from Kerry's workers' compensation insurance carrier from November 2, 2018, through December 13, 2018. He also admitted that his medical care was paid for by Kerry's workers' compensation insurance carrier. Moreover, Medrano admitted that since October 12, 2018, he had been "continually represented" by the same attorney and that this same attorney represented him while he was receiving workers' compensation benefits.

Medrano looks to a Texas Supreme Court case as a "foundational contrast" to his case. *See Medina v. Herrera*, 927 S.W.2d 597, 603 (Tex. 1996). There, the supreme court concluded that the employee, Medina, had made an informed election of a workers' compensation remedy. *Id.* The court first stated that while the "mere receipt of compensation benefits does not automatically satisfy" the "informed" election element of the workers' compensation remedy, there were additional circumstances establishing, as a matter of law, that Medina had made an informed election. *Id.* Although Medina had submitted an affidavit stating that he did not understand that he had a right to pursue a common law intentional tort claim, the supreme court noted that it was "undisputed" that Medina was represented by an attorney both in submitting his formal claim for compensation benefits and in securing continued temporary income benefits at the contested case hearing. *Id.*

12

Medrano argues that the difference in *Medina* and his case is that his initial workers' compensation claim was filed without counsel; according to Medrano, he did not have legal representation until two months after he started receiving workers' compensation benefits.

However, Medrano's contention ignores the rest of the *Medina* opinion, where the court noted that "[b]y the time Medina filed th[e] suit, he had been receiving benefits for almost two years, the entire time represented by counsel." *Id.* Therefore, the court held, "Under these circumstances, Medina must, as a matter of law, be charged with knowledge of his remedies." *Id.* The court explained, "Because Medina's present claim . . . is fundamentally inconsistent with his earlier pursuit of compensation benefits, and because Medina is charged with knowledge of the ramifications of his actions, he made an informed choice of remedy as to [his employer]." *Id.*

Similarly, by the time Medrano filed suit, he had been "knowingly" receiving benefits both before and after he was represented by counsel. While his attorney did not send a letter of representation until almost two months after the accident, the attorney continuously represented Medrano while Medrano received impairment income benefits and medical care as a result of Kerry's workers' compensation insurance carrier. At no time did Medrano or his attorney file a request for hearings to dispute any of the benefits or contact Kerry or the insurance company to say that Medrano did not want workers' compensation benefits. Similar to the claim in

13

*Medina*, Medrano's present claim is "fundamentally inconsistent" with his earlier pursuit of and receipt of workers' compensation benefits. *See id.*

Likewise, Medrano's reliance on *Ramirez v. Pecan Deluxe Candy Co.*, 839 S.W.2d 101 (Tex. App.—Dallas 1992, writ denied) (op. on reh'g), is misplaced. In *Ramirez*, the employee had applied for and received workers' compensation benefits, but he made the claim six days after sustaining injuries and while still in the hospital. *Id.* at 103. In holding that Pecan Deluxe did not prove that Ramirez had made an informed election of remedies, the court noted that the "summary judgment evidence proved only that Ramirez applied for and received workers' compensation benefits for his injuries" and that there was "no summary judgment evidence showing that he [had] made an informed election between workers' compensation benefits and recovery under an intentional tort cause of action." *Id.* at 107.

Here, unlike the plaintiff in *Ramirez*, Medrano did not make a claim for workers' compensation benefits while he was still in the hospital. And while Medrano was not represented by an attorney when he initially filed for workers' compensation benefits, this fact alone is not dispositive of whether he made an informed election of remedies. *See Boullt*, 2004 WL 2357881, at *4 (holding that circumstances surrounding the delayed application for workers' compensation benefits showed an election of remedies even when the applicant was not represented by an attorney); *see also Anderson v. U.S. Fire Ins. Co.*, No. 05-92-02811-CV, 1994 WL 74009, at *1–3 (Tex. App.—Dallas Mar. 8, 1994, no pet.) (not designated for publication) (affirming

14

summary judgment that employee made a "voluntary, knowing, and intelligent election of remedies" despite one of her complaints being that her employer had told her that she should not retain an attorney). As set out above, there was additional evidence that Medrano made an informed election to collect workers' compensation benefits. *Cf. Reece v. Westport Tech. Ctr. Int'l, Inc.*, No. 14-96-00799-CV, 1998 WL 268844, at \*5 (Tex. App.—Houston [14th Dist.] May 28, 1998, no pet.) (not designated for publication) (holding that defendants met their summary judgment burden that plaintiff made an informed choice of remedies by establishing that plaintiff knew the cause of her injury, was aware of the harassment when she filed a claim for benefits, and was represented by counsel at the time she sought compensation benefits). Considering these additional circumstances, Medrano is charged with knowledge of his remedies. *See Medina*, 927 S.W.2d at 603. We overrule Medrano's sole issue.

## IV. Conclusion

Having overruled Medrano's sole issue, we affirm the trial court's order granting summary judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: January 9, 2025

15