COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-225-CV

 

 

VICKI PRESLEY, AS NEXT FRIEND                                          APPELLANT

OF SHAWN DAVIS, DECEASED

                                                   V.

 

REPUBLIC ENERGY DRILLING, L.L.C.                                         APPELLEE

 

                                              ------------

 

           FROM THE 153RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Vicki Presley, as Next Friend of her
deceased son, Shawn Davis, filed this suit against her son=s former
employer, appellee Republic Energy Drilling, L.L.C., along with two of his
former coworkers, Louis Goodman and Teddy Garland, who are not parties to this
appeal.  Appellee filed a motion for
summary judgment, which was granted on October 30, 2006.  This appeal followed.








Background Facts and Litigation History

Shawn worked on oil rigs for appellee and was
killed on November 25, 2003 in Denton County, Texas.  In her suit, filed in Tarrant County, Texas
on November 21, 2005, appellant claimed that Goodman and Garland, two of
appellee=s
employees, were responsible for Shawn=s death.[2]  They are both serving sentences for
manslaughter convictions in connection with Shawn=s death.

Before appellant filed the Tarrant County suit,
on June 1, 2004, Shawn=s estranged father, Jimmy Davis,
filed a civil suit against appellee seeking monetary damages for Shawn=s death
in Dallas County, Texas.  Appellant was
not served with the Dallas County suit. 
Summary judgment was granted in appellee=s favor
in that suit originally on February 28, 2006, with an amended judgment on June
12, 2006.








Regardless, on March 20, 2006, appellee moved to
transfer venue of the Tarrant County suit to Dallas County to consolidate it
with the one filed by Jimmy.  However, at
the hearing on appellee=s motion for summary judgment,
appellee=s
counsel represented to the court that final summary judgment had already been
granted in the Dallas County suit so that appellee=s motion
to transfer would therefore be moot. The trial court agreed and denied appellee=s motion
to transfer.

Appellant filed an application for temporary
administration of Shawn=s estate in March 2006, in
Denton County, Texas.  The Denton County
Probate Court appointed appellant temporary administrator on March 29, 2006, at
which time she tried unsuccessfully to intervene in Jimmy=s Dallas
County suit.[3]       Ultimately,
on August 2, 2006, appellee moved for summary judgment in the Tarrant County
suit.  The trial court held a hearing on
appellee=s
traditional 166a(c) motion for summary judgment on September 28, 2006 and
granted final summary judgment to appellee on October 30, 2006.

                                 Basis
for Summary Judgment








Appellee sought summary judgment on several
grounds.  First, appellee claimed that
appellant=s claims were barred as a matter
of law by res judicata because the same or similar claims had already been
litigated to finality in the Dallas County lawsuit.  Second, appellee asserted there were no
questions of material fact with respect to appellee=s liability
because appellee was not responsible under a theory of vicarious liability for
the intentional torts, if any, committed by its employees against Shawn.  Lastly, as Shawn=s
employer and as a subscriber under the Texas Workers=
Compensation Act (TWCA), appellee claimed that a survival action based upon
negligence or gross negligence is limited to the exclusive remedies under the
TWCA.

                                          Issue
Presented

On appeal, appellant challenges the propriety of
the trial court=s grant of the summary judgment
in appellee=s favor.  Within this single issue we will address (1)
whether Jimmy had standing to bring suit on behalf of Shawn=s estate
in Dallas County, thereby barring the action below by the doctrines of res
judicata and collateral estoppel; (2) whether appellee is protected by the
exclusive remedy provisions of the TWCA with respect to the types of claims
asserted against appellee by appellant; and (3) whether appellee was
vicariously liable for any acts of its codefendants below because they were
vice principals of appellee.

                                       Standard
of Review








In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.

When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  Evidence
that favors the movant=s position will not be
considered unless it is uncontroverted.  Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47
(Tex. 1965).  But we must consider
whether reasonable and fair-minded jurors could differ in their conclusions in
light of all of the evidence presented.  See
Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City
of Keller v. Wilson, 168 S.W.3d 802, 822B24 (Tex.
2005).

The summary judgment will be affirmed only if the
record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of action or defense as
a matter of law.  Clear Creek Basin,
589 S.W.2d at 678.








A defendant who conclusively negates at least one
essential element of a cause of action is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

A defendant is entitled to summary judgment on an
affirmative defense if the defendant conclusively proves all the elements of
the affirmative defense.  Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.  Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).

                                          Applicable
Law

Is Shawn=s Estate Bound by the Dallas
Suit? (Standing to Bring Suit)








Generally, only the personal representative of an
estate may bring a survival cause of action. 
Shepherd v. Ledford, 962 S.W.2d 28, 31 (Tex. 1998) (citing Frazier
v. Wynn, 472 S.W.2d 750, 752 (Tex. 1971), and Tex. Civ. Prac.  & Rem.
Code Ann. ''
71.021(b), 71.004(b) (Vernon 2008)). 
However, the Texas Supreme Court also observed in Shepherd that
an heir at law could pursue a survival action within the four-year period
allowed for administration proceedings if such heir proved that no
administration was pending and that none was necessary.  Id. at 31B32 (citing
Frazier, 472 S.W.2d at 752).

        Shawn died intestate, single, and without children; thus, both
of his parents were his only heirs.  See
Tex. Prob. Code Ann. ' 38(a)(2)
(Vernon 2003).  Therefore, either of his
parents could have maintained the survival action as heirs or as personal
representatives of his estate.  His
father, Jimmy, was the first to file suit in Dallas on June 1, 2004, pleading
that no administration was pending and that none was necessary, in order to
comport with Shepherd.  962
S.W.2d at 31B32.  Appellant contends that Jimmy alleged that no
administration was necessary but failed to prove no administration was
necessary for Shawn=s estate.  Therefore, appellant contends Jimmy lacked
standing to represent the estate in the Dallas County litigation and that it
therefore is not binding on appellant.  








In order to pursue a cause of action, one must
have both standing and capacity to sue.  Lorentz
v. Dunn, 171 S.W.3d 854, 856 (Tex. 2005). 
In a survival action a decedent=s estate
has a justiciable interest in the controversy to confer standing but lacks
capacity to sue.  Austin Nursing Ctr.,
Inc. v. Lovato, 171 S.W.3d 845, 850 (Tex. 2005).  Only if the heirs prove both that no
administration is pending and that none is necessary have the courts allowed
them to maintain a survival suit during the four year period allowed for administration
of an estate.  Shepherd, 962
S.W.2d at 31B32.  Appellant contends that Jimmy failed to prove
standing to bring his Dallas County suit, thereby resulting in a judgment that
is not binding on Shawn=s estate or appellant, as its
personal representative.  Furthermore,
appellant argues that neither res judicata nor collateral estoppel can bar
Shawn=s estate
from pursuing this action because it was not a party to the Dallas County
action.[4]








Appellant raises her complaint primarily as a
challenge to Jimmy=s standing to bring the
Dallas County lawsuit when in reality her complaint is one of capacity.  See Lovato, 171 S.W.3d at 850B51
n.3.  Appellant concedes Jimmy was an
heir and that he brought suit within the four-year limitations period;
therefore, he had standing.  See
Shepherd, 962 S.W.2d at 31B32.
Appellant complains only that he failed to prove that no administration was
necessary in the Dallas County lawsuit. 
However, whether he did or did not prove that an administration was
unnecessary is an issue of capacity, not standing.  Lovato, 171 S.W.3d at 848B49.  Without standing, a court lacks jurisdiction,
which may be raised at any time.  Id.
at 849.  But capacity, which relates to
the legal authority to sue or be sued, is an issue that should be raised by a
verified pleading in the trial court, not by a collateral attack in a separate
proceeding.  Tex. R. Civ. P. 93(1)-(2); Lovato, 171 S.W.3d at 849;
Intracare Hosp. N. v. Campbell, 222 S.W.3d 790, 796 (Tex. App.CHouston
[1st Dist.] 2007, no pet.);  Armes
v. Thompson, 222 S.W.3d 79, 82 (Tex. App.CEastland
2006, no pet.).  In this regard,
appellant concedes she had knowledge of the Dallas County lawsuit before the
summary judgment was granted.  And while
her motion to intervene and her motion for new trial may have been filed late,
i.e., more than thirty days after the February 28, 2006 original summary
judgment date, we cannot tell from this record because it does not include
file-marked copies of these pleadings.  See Tex.
R. Civ. P. 329b(a); Malone, 182 S.W.3d at 468.  Furthermore, because the Dallas court signed
an AOrder of
Final Judgment@ 
vacating the February 28, 2006 order and re-granted a final summary
judgment to appellee on June 12, 2006, this would indicate that the earlier
February 28 order was interlocutory in some manner so that the trial court had
indeed retained jurisdiction between February and June, thus giving appellant
an opportunity to have intervened and challenged Jimmy=s capacity
by a motion for new trial instead of by this collateral attack.  








Therefore, we conclude and hold that appellant=s attack
on Jimmy=s
capacity to represent Shawn=s estate
in the Dallas County litigation is an invalid collateral attack on that
judgment.  Because this attack on Jimmy=s
capacity was not made by verified pleading in the Dallas County suit, it comes
too late; therefore, we overrule this portion of appellant=s issue.

Is Appellee Protected by the Exclusive Remedy Provisions of the TWCA?

It is undisputed that appellee was an employer
under the TWCA and maintained workers=
compensation insurance in accordance with the TWCA.  Additionally, Shawn was an employee of
appellee at the time of his death.  If an
employee is injured or killed due to the negligence or gross negligence of an
insured employer, the TWCA bars suits based upon such acts of negligence or
gross negligence except for exemplary damages in death cases.  TEX. LAB. CODE ANN. ' 408.001(a)B(b)
(Vernon 2006); Castleberry v. Goolsby Bldg. Corp., 617 S.W.2d 665, 666
(Tex. 1981).  Appellant contends,
however, that the incident resulting in Shawn=s death
falls within the Aintentional injury exception@ to the
TWCA so that appellant is not limited to the remedies of the TWCA.  

Does the Intentional Injury Exception of the TWCA Apply?








The supreme court has held that intentional
injuries committed by the employer or at the specific direction of a corporate
employer fit within the intentional injury exception.  See Medina v. Herrera, 927 S.W.2d 597, 600
(Tex. 1996).  In other words, the TWCA
does not apply, and therefore provides no coverage, for intentional torts
attributable directly to an employer.  Id.
at 600B01.  But, according to appellee, Medina also
requires an intentionally injured employee to show that the employer ordered or
directed the intentional injury to occur; otherwise, the TWCA provides the
exclusive remedy.  Id. at 601; see
TEX. LAB. CODE ANN. ' 406.031(a) (Vernon 2006)
(applying TWCA to intentional assaults committed by fellow workers if the
dispute is employment-related).  Appellee
contends appellant failed to present at least a scintilla of evidence that the
conduct toward Shawn was either caused by personal animosity or ordered by
appellee.  In response, appellant says Medina
does not apply to this case because it violates the open courts provision of
the Texas Constitution[5]
and because it has never been cited by another court and  therefore has no precedential value.  We disagree.

Medina is a Texas Supreme Court
opinion.  Id. at 602.  It has never been overruled, so it is the law
of the State of Texas and retains its precedential value.  See generally Lubbock County, Tex. v.
Trammel=s Lubbock Bail Bonds, 80
S.W.3d 580, 585 (Tex. 2002); Am. Nat=l Ins.
Co. v. Int=l Bus. Mach. Corp., 933
S.W.2d 685, 688 (Tex. App.CSan
Antonio 1996, writ denied).  Accordingly,
we may look to Medina as controlling precedent.








The intentional injury exception to the TWCA does
not apply to Goodman=s and Garland=s acts;
their acts were not intentional acts of the employer within the meaning of
TWCA.  According to Reed Tool, a
case cited by both parties, Acommon
law liability of the employer cannot be stretched to include accidental
injuries caused by the gross, wanton, willful, deliberate, intentional,
reckless, culpable, or malicious negligence, breach of statute, or other
misconduct of the employer short of genuine intentional injury.@  Reed Tool Co. v. Copelin, 689 S.W.2d
404, 406 (Tex. 1985).  There was no
evidence that Goodman and Garland intended the result of their acts, i.e.,
Shawn=s
death,  and there was no  evidence that appellee ordered, approved, or
requested that Shawn be hazed in any manner.








Appellant contends in her brief that the focus of
intent should be on the intent to attach Shawn to the cat-line, not the intent
to harm Shawn, that controls.  Again, Reed
Tool provides us with some guidance on the meaning of Aintentional
injury@ within
the meaning of the TWCA.  Id. at
407.  AThe
fundamental difference between negligent injury, or even grossly negligent
injury, and intentional injury is the specific intent to inflict injury.@  Id. at 406.  So it is the intent to injure or the desire Ato bring
about the physical results@ that
becomes the focus of the Aintent@
inquiry, not just the mere physical act that causes the injury.  Id. (quoting Bazley v. Tortorich,
397 So.2d 475, 482 (La. 1981)).  In other
words, the focus is on whether the actor desired to cause the consequences of
his act or believed that the consequences were substantially certain to result
from it.  Id. at 407.

Here, all the evidence showed that Goodman and
Garland intended only to haze or pull a prank on Shawn.  There was no evidence of intent to kill or
injure him.  Goodman was convicted of
manslaughter, which is defined as recklessly causing the death of another.  TEX. PENAL CODE ANN. ' 19.04(a)
(Vernon 2003).  AReckless@ is
defined as Aaware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.@ 
Id. ' 6.03(c).  AReckless@ is a
lower standard than Asubstantially certain@ or Adesired
to cause the result@ and therefore does not rise to
the level of intentional.  We therefore
conclude and hold that the trial court correctly concluded that the intentional
injury exception to the TWCA did not apply. 
We overrule this portion of appellant=s sole
issue.

Were Goodman and Garland
Vice Principals of Appellee?








Appellant also argues that
appellee was liable for the acts of its workers, in particular, Goodman,
because his conduct was intentional and he was a vice principal of
appellee.  Appellant contends that
Goodman was a vice principal because he had the authority to hire and fire
employees, and that he had, in fact, hired Shawn.  Appellant contends she raised a fact issue on
whether Goodman was a vice principal.

Joe Presley, Shawn=s
stepfather, testified by affidavit that Goodman had hired Shawn, that he, Joe,
had been in the oil field industry for over thirty years, and that as a driller
he has always had the authority to hire and fire the members of his crews.  He also stated that he was there when Goodman
interviewed and hired Shawn for the job.








Conversely, appellee=s
summary judgment evidence showed that 
Goodman was the driller on Rig #2 and that he reported to the tool
pusher of the rig, Lonnie Lovern. 
Garland was a chain hand on the rig and reported to  Goodman. 
Furthermore, according to the affidavit testimony of Robert Lindsay,
appellee=s
president, neither of these employees had authority to hire anyone, neither had
freedom in deciding their job duties, and neither was responsible for any
nondelegable duties.  Neither was a
corporate officer or a manager of the drilling rig in question.  Lindsay did not deny Goodman=s
authority to fire employees. However, Lindsay=s  evidence was specific as to appellee, whereas
Joe Presley=s evidence was general and
conclusory in nature as being applicable to the oil and gas industry in
general, except as to his claim of being present when Goodman hired Shawn.  See Tex.
R. Civ. P. 166a(f); Souder v. Cannon, 235 S.W.3d 841, 849 (Tex.
App.CFort
Worth 2007, no pet.).  While this may
create a fact question on whether Goodman offered the job to Shawn, it is
insufficient to tell us whether Goodman actually had the authority to
hire Shawn, which is directly disputed by Lindsay=s
affidavit.  Moreover, merely having
authority to hire and fire employees is insufficient, alone, to make one a vice
principal.  See Fort Worth Elevators
Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, 406 (1934), disapproved of
on other grounds by Wright v. Gifford-Hill & Co., 725 S.W.2d 712, 714
(Tex. 1987); Johnson  v. Scott Fetzer
Co., 124 S.W.3d 257, 267B68 (Tex.
App.CFort
Worth 2003, pet. denied).  We overrule
this portion of appellant=s sole issue.

Is Appellee Liable under Respondeat Superior?

Appellant also contends that because the
intentional tort was committed in the course and scope of employment, or the
intentional tort was connected with and immediately grew out of that
employment, the liability associated with it can be imputed to appellee under
the theory of respondeat superior, citing  
GTE Sw., Inc. v. Bruce,  998
S.W.2d 605, 617B18 (Tex. 1999).








According to the doctrine of respondeat superior,
an employer can be held responsible for the negligent acts of its employees
acting within the course and scope of their employment, even if the employer
has personally committed no wrong.  Green
v. Ransor, Inc., 175 S.W.3d 513, 516 (Tex. App.CFort
Worth 2005, no pet.) (citing Baptist Mem=l Hosp.
Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998)).  This is also true for intentional torts;
however, these acts must be closely connected with the employee=s
authorized duties.  GTE, 998
S.W.2d at 617B18.  Appellant does not state, nor does the
summary judgment evidence show, how Goodman=s or
Garland=s
actions in Ainitiating@ Shawn
were in any way connected with their authorized duties for appellee.  We overrule this portion of appellant=s sole
issue.

Does Res Judicata Require This Court to Affirm the Summary Judgment? 

Appellant contends that res judicata does not
create a bar to this litigation because appellee cannot prove identity of
parties between the Dallas County litigation and this litigation.  Appellant contends that because Jimmy did not
prove he had the capacity to bring a lawsuit on behalf of Shawn=s estate
in the Dallas County litigation, the estate was not a party to the Dallas
County litigation and therefore is not barred from being a party to the
identical causes of action being brought by appellant on the estate=s behalf
in the Tarrant County litigation in the trial court below.  Thus, according to appellant, appellee cannot
show identity of parties, one of the fundamental requisites for the application
of the theory of res judicata, according to Barr v. Resolution Trust Corp., 837
S.W.2d 627, 628, 631 (Tex. 1992).  








Res judicata prevents litigation of claims that
arise out of the same subject matter as previously litigated claims or that
could have been litigated in a prior suit. 
Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex.
2007).  One must show a prior
final judgment on the merits with identity of parties or those in privity with
them.  Id.  Appellant challenges only the identity of
parties prong, contending that appellee cannot show identity of parties because
of the claimed Aparty@ defect
in the Dallas County case.  As discussed
above, however, the defect, if any, was only with Jimmy=s
capacity to act on behalf of Shawn=s
estate, not his standing to act on behalf of Shawn=s
estate.  Because he was an heir, he had
standing to enter an appearance on behalf of the estate.  Thus, the estate was a party to the Dallas
County litigation, and there is therefore identity of parties between the
Dallas County litigation and the Tarrant County litigation.  This portion of appellant=s issue
is overruled.

Were There Unaddressed Causes of Action in Appellee=s Motion for Summary
Judgment?

 

Appellant also contends that she
asserted two causes of action that were not addressed by appellee in its motion
for summary judgment: one based upon the criminal conduct of its employees
under the Texas Civil Practices and Remedies Code section 41.005, subsections
(c)(1) and (3), and one asserting a claim for 
intentional infliction of emotional distress, which appellant says is
not covered or barred by the TWCA. See Tex.
Civ. Prac. & Rem. Code Ann. '
41.005(c)(1), (3) (Vernon 2008).  













For a summary judgment to be final, it must
dispose of all issues and parties.  Lehmann
v. Har-Con Corp., 39 S.W.3d 191, 192B93 (Tex.
2001); City of Beaumont v. Guillory, 751 S.W.2d 491, 492 (Tex.
1988).  Finality in the summary judgment
context is determined by looking not only at the four corners of the order at
issue, but also the appellate record as a whole to determine which claims were
asserted, which claims were addressed, and which claims the trial court
intended to address.  See Lehmann, 39
S.W.3d at 203B04.  A trial court cannot grant summary judgment
except on the grounds expressly presented in the motion.  Reynolds v. Murphy, 188 S.W.3d 252,
271 (Tex. App.CFort Worth 2006, pet. denied)
(citing Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 204
(Tex. 2002), and Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 912
(Tex. 1997)), cert. denied, 127 S. Ct. 1839 (2007).  However, summary judgment may be proper when
a ground asserted in a motion for summary judgment conclusively negates a
common element of newly or previously pled claims or when the original motion
is broad enough to encompass a newly pled claim.  Rotating Servs. Indust., Inc., v. Harris,
245 S.W.3d 476, 487 (Tex. App.CHouston
[1st Dist.] 2007, pet. denied).  This
court has previously so stated this rule as to an amended petition that
essentially reiterates previously pled causes of action that have already been
responded to in the response to motion for summary judgment.  Fraud-Tech, Inc. v. Choicepoint, Inc.,
102 S.W.3d 366, 387 (Tex. App.CFort
Worth 2003, pet. denied).

As to the intentional infliction of emotional
distress claim, appellee moved for summary judgment on all claims asserted in
appellant=s original petition based upon
res judicata: A[T]his Honorable Court may
dismiss Plaintiff=s lawsuit with prejudice merely
by applying the doctrine of res judicata to Plaintiff=s
claims.@  Although appellant claimed this was
insufficient and challenged this in her response to the motion for summary
judgment, appellee replied by saying that there is no need to specifically
address the intentional infliction of emotional distress claim because it too
falls with the liability for all the other torts asserted as causes of action
in appellant=s pleadings: because there is no
vice principal liability and no vicarious liability, there can be no liability
asserted against appellee for any cause of action including intentional
infliction of emotional distress. 
Appellee also points to the Dallas County court=s
judgment, which states its intent to dispose of the same claims asserted in
appellant=s lawsuit.








Our review of Jimmy=s
petition shows that it was brought for Shawn=s
wrongful death along with any survival claims, both on behalf of the estate
and  on behalf of all beneficiaries and
included not only negligence claims but also any of those same such acts that
were or could have been intentional. 
Furthermore, Jimmy specifically pled for damages resulting from Shawn=s mental
anguish.  As stated above, res judicata
prevents litigation of claims that arise out of the same subject matter as
previous litigated claims or that could have been litigated in the prior cause.  Daccach, 217 S.W.3d at
449.  The intentional infliction of
emotional distress claim clearly arose out of the same subject matter of all
the other claims and requires a mental state that we have already determined
was negated.  See Rotating Servs.,
245 S.W.3d at 487; Daccach, 217 S.W.3d at 449.  

We overrule this portion of appellant=s issue
and turn to damages.








Section 41.005 of the civil practice and remedies
code governs liability for exemplary damages arising from the criminal acts of
others.  Tex. Civ. Prac. & Rem. Code Ann. ' 41.005.  A pleading for damages under section 41.005,
subsections (c)(1) and (c)(3) of the civil practices and remedies code does not
allege a separate cause of action but seeks to impose liability for exemplary
damages under an exception to the general rule that exemplary damages resulting
from a criminal act of another do not lie. 
See id.; cf. Tex. Dep=t of
Human Servs. v. Okoli, No. 01-07-00103-CV, 2007 WL 1844897, at * 5B6 (Tex.
App.CHouston
[1st. Dist.] 2007, pet. filed) (holding same as to pleading purporting to
assert Aclaim@ for
damages under section 41.003 of the civil practice and remedies code).  Under subsections (c)(1) and (3), an employer
may be liable for exemplary damages only if the employee=s
criminal act was authorized by the principal or if the agent was employed in a
managerial capacity and was acting in the scope of employment.  Tex.
Civ. Prac. & Rem. Code Ann. '
41.005(c)(1), (3).  Because appellee has
shown that none of the acts were authorized by appellee or within Goodman=s or
Garland=s scope
of employment, none of appellant=s claims
could fall within the parameters of the exceptions listed in section
41.005(c)(1) and (3).  Thus, we conclude
that this prayer for relief was not another cause of action and affected only
the potential scope or amount of damages to which appellant might have been
entitled upon any of her pled causes of action. 
See id.  Therefore, we also
conclude that appellee conclusively negated the prayer for exemplary damages as
well.  We overrule this remaining portion
of appellant=s issue.

                                                    

 

 

 

 

 

 

 








                                             Conclusion

Having overruled all portions of appellant=s sole
issue on appeal, we cannot say that the trial court erred by granting summary
judgment for appellee.  We therefore
affirm the trial court=s judgment.  

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL: CAYCE, C.J.;
LIVINGSTON AND MCCOY, JJ.

 

DELIVERED:  August 29, 2008











[1]See Tex. R. App. P. 47.4.





[2]Goodman attached the
cat-line of the drilling rig to a Aderrick belt@ around Shawn=s waist, and it became tangled in the rig=s equipment causing Shawn
to fall into the rig; Garland was present and participated.





[3]Citing Malone v.
Hampton, 182 S.W.3d 465, 468 (Tex. App.CDallas 2006, no pet.), appellant Apassed@ on appearing at her
motion for new trial hearing, apparently believing the trial court had lost
jurisdiction to rule on her motion and attempt to intervene. 





[4]Appellant was never named
or served as a party in the Dallas County cause of action.





[5]Appellant provides no
explanation or discussion for that assertion, so we will not address it
here.  See Tex. R. App. P. 38.1(h); McClure v. Denham, 162 S.W.3d
346, 349 (Tex. App.CFort Worth 2005, no
pet.).